THE STATE, EX REL. VAN DE KERKHOFF ET AL., *v.* DOWLING, CLERK, ET AL.

[Cite as *State, ex rel. Van de Kerkhoff,*
*v. Dowling* (1991), 61 Ohio St.3d 55.]

(No. 90–746—Submitted April 16, 1991—Decided June 26, 1991.)

*Phillips & Co., L.P.A.,* and *Gerald W. Phillips,* for relators.

*David R. Harbarger,* Law Director, and *Michael E. Murman,* for respondent.

*Squire, Sanders & Dempsey, Daniel J. O'Loughlin* and *Charles R. McElwee II;* and *Fred M. DeGrandis,* urging denial of the writ for *amicus curiae,* Lakewood Hospital.[1]

---

*Per Curiam.* For a writ of mandamus to issue, relators must first show that they are entitled to respondents' performance of a clear legal duty. *State, ex rel. The Fairfield Leader, v. Ricketts* (1990), 56 Ohio St.3d 97, 102, 564 N.E.2d 486, 491. To establish a duty for respondents to accept and determine the sufficiency of their part-petitions, as supplemented, relators rely on the Lakewood Charter, principles of estoppel and the doctrine of substantial compliance. We find relators' reliance misplaced and, therefore, deny the writ.

---

1. Lakewood Hospital's motion to file a brief as an *amicus curiae* is granted.

*The Charter*

Relators argue that they are entitled to supplement their part-petitions under Section 5, Article XI of the charter because their initial part-petitions contained more than 2,245 signatures "on their face." Section 5 provides, in part:

"If the Clerk's certificate shows that the petition contains insufficient valid signatures in its support[,] he shall at once notify each member of the committee [that filed the petition] * * *. *In the event the initial petition contained prima-facie sufficient signatures, additional signatures of qualified electors signed in the manner required in Section 3 of this article [and] appended to petitions in form as previously filed may[,] within fifteen (15) days from the date of the notification to the committee[,] be filed with the Clerk.* Within ten (10) days after the filing of such further petitions, the Clerk shall examine them and attach thereto his certificate of the result. If still insufficient, or if no further petitions have been filed, the Clerk shall file the petition in his office and shall notify in the manner herein provided each member of the committee of that fact." (Emphasis added.)

Respondents argue that petition signatures are not prima facie sufficient under the charter unless accompanied by circulator affidavits and that without circulator affidavits, relators' initial part-petitions were irreparably invalid. Respondents rely mainly on Section 3, Article XI of the charter, which provides:

"Each signer of a petition shall sign his name in ink or indelible pencil, and shall place on the petition paper after his name, his place of residence by street and number. The signatures to any such petition paper need not all be appended to one paper *but to each such paper there shall be attached an affidavit by the circulator thereof stating the number of signers to such part of the petition and that each signature appended to the paper is the genuine signature of the person whose name it purports to be, and was made in the presence of the affiant.*" (Emphasis added.)

We agree with respondents that the charter requires circulator affidavits for signatures on a referendum petition to be considered prima facie sufficient. We do so because, contrary to relators' argument, the right to supplement under Section 5, Article XI is not unrestricted. Rather, Section 5 permits supplementation of referendum petitions reflecting the necessary number of signatures only by *"additional signatures* of qualified electors signed in the manner required in Section 3 * * *."* (Emphasis added.) Section 5, therefore, provides no authority for supplementing a petition with circulator affidavits erroneously omitted, or indeed with anything other than additional signatures in accordance with Section 3. See, also, Section 6,

Article XI, which directs the clerk to certify to the council any petition that is found sufficient or that is "rendered sufficient by further signatures as permitted in this article * * *."

The failure of Section 5 to expressly allow for supplementation by independent circulator affidavits is significant. It means that the petition signatures must initially be accompanied by the requisite number of circulator affidavits because the absence of such affidavits cannot be corrected later. Accordingly, we hold that before a right to supplement a referendum petition attaches under Section 5, the petition filed initially must include appropriate circulator affidavits.

Here, relators tried to do more than just supplement their part-petitions with additional signatures of qualified electors; they also attempted to submit circulator affidavits erroneously omitted from their initial part-petitions. Nothing in the Lakewood Charter permits relators to make this supplement or requires respondents to accept it. Thus, we further hold that respondents have no duty under the charter to determine the sufficiency of relators' part-petitions, as supplemented. Accord *State, ex rel. Macko, v. Monzula* (1976), 48 Ohio St.2d 35, 2 O.O.3d 129, 356 N.E.2d 493 (writ of mandamus to compel certification of recall petitions to city council denied because circulator affidavits did not strictly comply with statutory requirements). See, also, *State, ex rel. Janasik, v. Sarosy* (1967), 12 Ohio St.2d 5, 41 O.O.2d 3, 230 N.E.2d 346, and *State, ex rel. Stillo, v. Gwin* (1969), 18 Ohio St.2d 66, 47 O.O.2d 189, 247 N.E.2d 481 (writs of prohibition issued to prevent placement of referendums on ballot because circulator affidavits either were statutorily defective or were omitted altogether).[2]

---

2. Relators could not establish the duty alleged even if they had relied on *State, ex rel. Buchanon, v. Stillman* (1967), 12 Ohio St.2d 13, 41 O.O.2d 151, 231 N.E.2d 61, and had argued that circulator affidavits were superfluous once the board of elections checked the signatures on their part-petitions. In *Buchanon,* the relator sought to prevent the board of elections from placing certain local option issues on the ballot. We acknowledged that where the circulator affidavits in the petition fail to state the circulator's belief that the signers were "qualified to sign," the board may reject the petition for that reason alone. However, we held that if the board ignores the deficiency and proceeds to determine that a sufficient number of the signers were so qualified, the statement of the circulator to that effect no longer serves any purpose, and its omission is no longer a defect.

We reasoned in *Buchanon* that the question of whether the signers were "qualified to sign" could be independently determined by the board from its own records, and once it does so, the lack of a circulator's statement to that effect becomes a mere technicality. However, we emphasized in *Buchanon* that the omission of other required statements from the circulator's affidavit would remain fatal where the board could not determine the omitted information from its own records, such as the fact that the circulator witnessed the affixing of each signature.

## Estoppel and Substantial Compliance

Arguing that the deficiency of their initial part-petitions was caused by the noncomplying petition forms suggested by respondents and the board of elections, relators also contend, in effect, that respondents are estopped from asserting the lack of attached circulator affidavits. We must disagree.

This court has routinely held that estoppel does not apply against election officials in the exercise of government functions. See, *e.g., State, ex rel. Svete, v. Geauga Cty. Bd. of Elections* (1965), 4 Ohio St.2d 16, 33 O.O.2d 139, 212 N.E.2d 420, and *State, ex rel. Brettell, v. Canestraro* (1987), 32 Ohio St.3d 190, 513 N.E.2d 242 (mistaken advice of election official as to validity of instrument does not estop board of elections from declaring instrument invalid); accord *Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 17 OBR 64, 477 N.E.2d 623.

*State, ex rel. Humble, v. Brown* (1977), 52 Ohio St.2d 9, 6 O.O.3d 77, 368 N.E.2d 294, is particularly controlling in this regard. In *Humble,* circulator affidavits were required by law for signatures on an initiative petition. However, there, as here, the relator used petition forms obtained from the board of elections, and those forms contained only circulator statements. We denied a writ of mandamus to compel an initiative election because the board's error in providing noncomplying forms did not exempt relator from the long-established rule requiring strict compliance with Ohio election laws. *Id.* at 11, 6 O.O.3d at 78, 368 N.E.2d at 296, citing *State, ex rel. Van Aken, v. Duffy* (1964), 176 Ohio St. 105, 27 O.O.2d 1, 198 N.E.2d 76. See, also, *State, ex rel. Senn, v. Cuyahoga Cty. Bd. of Elections* (1977), 51 Ohio St.2d 173, 174, 5 O.O.3d 381, 382, 367 N.E.2d 879, 880.

The preceding authority supports the conclusion that respondents are not estopped from asserting the absence of circulator affidavits in relators' initial part-petitions. Relators have cited no authority that allows us to reach another result. Accordingly, we cannot apply estoppel here to find respondents under a duty to act as requested.

Relators also argue briefly that the circulator statements on their part-petitions substantially comply with the charter requirement of a circulator affidavit. In *State, ex rel. Evergreen Co., v. Franklin Cty. Bd. of Elections* (1976), 48 Ohio St.2d 29, 2 O.O.3d 126, 356 N.E.2d 716, however, we held that an unsworn statement is no substitute for a circulator affidavit. Accord

---

*Buchanon* is distinguishable from this case because Section 3, Article XI of the Lakewood City Charter requires the circulator to attest that each signature was made in his presence, and this information was not available to the board of elections. See, also, *Janasik, supra.*

*Humble, supra,* 52 Ohio St.2d at 10, 6 O.O.3d at 78, 368 N.E.2d at 296. Thus, substantial compliance also will not justify the relief relators seek.

As relators are unable to satisfy the test for a writ of mandamus, and no issues of material fact remain in dispute, respondents are entitled to judgment as a matter of law. Therefore, respondents' motion for summary judgment is granted, and the writ of mandamus is denied.

*Motion granted*
*and writ denied.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.