**[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 212.]**

THE STATE EX REL. COMMITTEE FOR THE REFERENDUM OF ORDINANCE NO.
3543-00 ET AL. *v*. WHITE, CLERK, ET AL.

[Cite as *State ex rel. Commt. for the Referendum of Ordinance No. 3543-00 v.
White*, 2000-Ohio-64.]

*Ordinances—Same procedural requirements that must be followed to enact an
ordinance must be followed to repeal an ordinance—Mandamus sought to
compel city of North Ridgeville et al. to submit Ordinance No. 3543-99 to
the electorate by placing it on the November 7, 2000 election ballot—
Laches—Relators acted with reasonable diligence, when—Writ granted,
when.*

The same procedural requirements that must be followed to enact an ordinance
must be followed to repeal an ordinance.

(No. 00-1457—Submitted September 8, 2000—Decided September 29, 2000.)

IN MANDAMUS.

————————————

{¶ 1} On March 6, 2000, respondent, City Council for the City of North Ridgeville, Ohio, enacted Ordinance No. 3543-99,[1] which would rezone approximately two hundred acres bordering the city of Avon from R-1 (residence district) to PCD (planned community development). On that same date, city council adopted Resolution No. 894-2000, which granted preliminary approval for a proposed planned community development on the property to be known as Kingston Place.

---

1. Although the parties refer to the ordinance in question as Ordinance No. 3543-00 rather than Ordinance No. 3543-99, the ordinance was enacted as No. 3543-99, and the referendum petition refers to it as No. 3543-99. Therefore, we will refer to the ordinance as No. 3543-99 rather than No. 3543-00.

**{¶ 2}** On April 3, relators Committee for the Referendum of Ordinance No. 3543-99 and its members filed a referendum petition with respondent Jim White, Clerk of Council for the City of North Ridgeville, requesting the submission of Ordinance No. 3543-99 to North Ridgeville electors for their approval or rejection at the November 7, 2000 general election. On April 17, during a city council meeting, White certified that the referendum petition was legally sufficient.

**{¶ 3}** Following White's certification of relators' referendum petition at the April 17 city council meeting, members of city council voted by a six-to-one margin to approve a motion to "rescind" Ordinance No. 3543-99. After the vote, a dispute arose concerning whether relators had sought a referendum on the correct ordinance because certain North Ridgeville officials indicated their belief that Resolution No. 894-2000 had automatically rezoned the property from residential to planned community development by city council's approval of the preliminary plan.

**{¶ 4}** On July 3, relators, the committee, its members, and other taxpaying residents of North Ridgeville, demanded, via letter, that the city law director bring a legal action to compel respondents White and city council to submit Ordinance No. 3543-99 to the Lorain County Board of Elections for placement on the November 7, 2000 election ballot. Relators contended in the July 3 demand letter that city council's April 17 vote to rescind Ordinance No. 3543-99 by passing a motion was ineffective because a new ordinance was required to repeal the ordinance.

**{¶ 5}** On July 6, the law director rejected relators' demand. The law director indicated that city council had properly repealed the ordinance on April 17 when it voted to grant the motion to rescind. In addition, the city law director noted that, based on new information, relators' referendum petition had contained an

insufficient number of valid signatures to warrant submission of the ordinance to the electorate.[2]

{¶ 6} On August 11, 2000, relators filed this action for a writ of mandamus to compel respondents, North Ridgeville, its city council, and White, to submit Ordinance No. 3543-99 to the electorate by placing it on the November 7, 2000 election ballot. Respondents filed an answer, and the parties filed evidence and briefs pursuant to our expedited election schedule under S.Ct.Prac.R. X(9).

––––––––––––––––––

*Phillips & Co., L.P.A.,* and *Gerald W. Phillips*, for relators.

*Eric H. Zagrans*, North Ridgeville Law Director, for respondents.

––––––––––––––––––

**DOUGLAS, J.**

{¶ 7} Relators claim that they are entitled to a writ of mandamus to compel respondents to submit Ordinance No. 3543-99 to the electors for their consideration on the November 7 general election ballot. We agree, and for the reasons that follow we grant the writ requested by relators.

{¶ 8} Initially we must address respondents' contention that relators' cause of action is barred by the doctrine of laches. Respondents contend that relators failed to act with the diligence and promptness required in election cases and, further, that relators lack any justifiable excuse for failing to file this action sooner to contest the action taken by city council on April 17. We do not agree with respondents.

{¶ 9} It is well established that in election-related matters, extreme diligence and promptness are required. *State ex rel. Schwartz v. Brown* (1964), 176 Ohio St. 91, 26 O.O.2d 438, 197 N.E.2d 801. See, also, *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 49, 600 N.E.2d 656, 659.

––––––––––––

2. Respondents do not contend in this proceeding that the referendum petition should now be disqualified as failing to have the minimum number of signatures required by the city charter.

When the required promptness has not been exhibited, we have routinely denied extraordinary relief in election-related cases based on laches. See, generally, *White*, 65 Ohio St.3d at 48, 600 N.E.2d at 659, and cases cited therein. Relators bear the burden of establishing that they acted with the requisite diligence in extraordinary writ cases involving elections. *State ex rel. Manos v. Delaware Cty. Bd. of Elections* (1998), 83 Ohio St.3d 562, 564, 701 N.E.2d 371, 373.

{¶ 10} In most instances, relators' delay of nearly four months in filing this action from the time city council voted to rescind Ordinance No. 3543-99, would, without justifiable excuse, warrant dismissal of relators' claims based on laches. However, we cannot ignore respondents' part in causing this delay. Therefore, after a thorough review of the evidence before the court, we find, for the reasons that follow, that relators did act with the requisite diligence in filing this mandamus action.

{¶ 11} On March 6, 2000, two actions were taken by the North Ridgeville City Council relating to the rezoning at issue. Ordinance No. 3543-99 rezoned the affected area from R-1 residential district to the zoning classification of Planned Community Development.[3] Resolution No. 894-2000 purported to grant *preliminary* approval for the proposed planned community development. In addition, however, other events surrounding the enactment of Ordinance No. 3543-99 and adoption of Resolution No. 894-2000 and the subsequent attempted repeal by city council of Ordinance No. 3543-99 are relevant to our consideration of this issue.

---

3. On September 20, 1999, Council of the City of North Ridgeville adopted Ordinance No. 3491-99. That ordinance is entitled "An Ordinance Adding Planned Community Development District As a *New Zoning Classification*." (Emphasis added.) The first paragraph provides that "the City Council has determined that Planned Community Development (P.C.D.) District *needs to be added* to the City of North Ridgeville Ordinances as a *new zoning classification*," and the third paragraph of the ordinance, designated as "Section 1," ordains that "P.C.D. District be added to the Ordinances of the City as [a] *new zoning classification*." (Emphasis added.) Thus, there can be no question that where a party seeks to create and construct a PCD, a zoning classification of PCD must exist or existing zoning must be changed to that classification by action of the city council.

**{¶ 12}** Prior to city council's votes on proposed Ordinance No. 3543-99 and proposed Resolution No. 894-2000, the law director for North Ridgeville advised the council members on February 24, 2000, of the need to consider the proposed ordinance and proposed resolution "in the proper sequence," "in the way that our *ordinances* require them to do." (Emphasis added.) According to the law director, under the city's recently adopted planned community development ordinance,[4] city council must grant preliminary approval of a proposed community development plan "as a *prerequisite* to Council approving the changing in the zoning." (Emphasis added.) The law director further clarified that his intent was to ensure that "Council votes on [proposed Resolution No. 894-2000] which is the legal prerequisite before it considers and votes on [proposed Ordinance No. 3543-99]." He further advised council that "[t]he approval of the Resolution granting the preliminary approval to the PCD plan must be considered by Council first. Then if council approves it, *then Council can consider the request to rezone*." (Emphasis added.) Finally, on March 6, 2000, the date of the third and final reading of proposed Ordinance 3543-99, and the same date as the enactment of Ordinance No. 3543-99 and passage of Resolution No. 894-2000, the law director referred to proposed Ordinance No. 3543-99 as the "proposal to re-zone" and further stated in relation to the proposed ordinance that "should Council vote to approve the change in zoning as requested from [residential to planned community development] [t]he developer would have one year within which to complete and file a final plan for development of the PCD District."

**{¶ 13}** At city council meetings subsequent to the enactment of Ordinance No. 3543-99 and the passage of Resolution No. 894-2000, on May 1, May 15, and June 5, the law director advised council that its adoption of Resolution No. 894-2000, which granted *preliminary* approval of the proposed planned community

---

4. See footnote 3.

development, also automatically rezoned the area at issue. In other words, he was now informing council that, in effect, its vote enacting Ordinance No. 3543-99 had been unnecessary, since its previous vote passing Resolution No. 894-2000 accomplished what Ordinance No. 3543-99 purported to do, *i.e.,* rezone the land from residential to a planned community development district.

{¶ 14} According to the law director, he informed council several times, prior to the votes enacting Ordinance No. 3543-99 and adopting Resolution No. 894-2000, that Resolution No. 894-2000 would automatically rezone the property in question. Contrary to these assertions of the law director, there is nothing in the record before this court that supports that contention. Even assuming, *arguendo*, that the law director did, in fact, convey that information to council, construing the evidence as a whole, we believe it is unlikely that members of city council understood the rezoning issue in the light that the director suggests.

{¶ 15} The need for the city law director to explain to city council the effect of its votes on Ordinance No. 3543-99 and Resolution No. 894-2000 *after* the passage of those items of legislation is testament to the confusion that existed among council members concerning this rezoning issue. We need not assess responsibility for the creation of the confusion. Suffice it to say that, undoubtedly, confusion also existed among those parties interested in voicing an opinion on the rezoning issue. This confusion, we believe, contributed at least in part to the relators' delay in filing this action.

{¶ 16} In addition to the foregoing, in response to relators' demand to compel respondents to submit Ordinance No. 3543-99 to the Lorain County Board of Elections for placement on the November 7 ballot, the law director raised an entirely new argument challenging the sufficiency of relators' referendum petition. This contention, questioning the number of valid signatures, was raised more than *two months* after the clerk of city council certified that the referendum petition was legally sufficient. In addition, there was an attempt to introduce two new

ordinances seeking to repeal approval of the preliminary plan for the proposed planned community development and subsequent alleged rezoning. Granted, introduction of these ordinances was untimely according to the North Ridgeville Charter. This, however, could be attributed, at least in part, to the changing legal positions of the city's law director. Relators' persistent attempts to undo the actions of city council should not be strictly construed against them when city council itself was not fully aware of the ramifications concerning its approval of Ordinance No. 3543-99 and adoption of Resolution No. 894-2000.

{¶ 17} The cumulative effect of the respondents' actions clearly contributed to relators' delay in filing this action. Although laches is not an affirmative defense in an election matter, *i.e.,* respondents are not required to raise the defense, laches is still an equitable doctrine. Respondents cannot be afforded the benefit of the doctrine when they come to the court having substantially contributed to the delay in question. *Christman v. Christman* (1960), 171 Ohio St. 152, 154, 12 O.O.2d 172, 173, 168 N.E.2d 153, 155. Respondents' claims of delay and alleged prejudice cannot stand the light of day in view of the record before us. Accordingly, laches does not bar relators' claims.

{¶ 18} The primary issue for our consideration is whether Section 13.2 of the North Ridgeville City Charter authorized city council to repeal Ordinance No. 3543-99 based only upon an oral motion without any underlying written document, to wit, an "ordinance." After considering all of the relevant charter provisions, we conclude that the North Ridgeville City Charter required city council to enact a new ordinance to repeal Ordinance No. 3543-99.

{¶ 19} Section *3.12* (three point twelve) of the North Ridgeville City Charter provides that "[a]ll legislative action shall be by ordinance or resolution except when otherwise required by the Constitution or the laws of the state of Ohio." Section *13.2* (thirteen point two) of the charter sets forth city council's

authority after the clerk of city council determines that a referendum petition is sufficient. Section 13.2 provides:

"Within thirty (30) days after the enactment by Council, of any ordinance or resolution which may be subject to a referendum under the laws of the State of Ohio, a petition signed by no less than ten percent (10%) of the total electors voting at the last preceding November election, may be filed with Council * * * by personally handing said petition to the Clerk of Council, requesting the ordinance or resolution be repealed or submitted to the vote of the electors. When said petition is filed, the Clerk of Council, shall within fourteen (14) days ascertain the sufficiency of the petition, and if found sufficient, the Council shall, within thirty (30) days after sufficiency has been established, reconsider such ordinance or resolution. If Council fails to repeal said ordinance or resolution within such thirty (30) day period, the Council shall submit it to a vote of the electors at the next regular election occurring more than seventy-five (75) days after the filing of such petition. If such petition is signed by at least twenty percent (20%) of such electors, the date of the election may be fixed therein, which may be a special election to be held at any time more than seventy-five (75) days after the filing of such petition."

{¶ 20} Relators assert that under Section 3.12 of the charter, which prescribes general procedure for municipal legislation, city council, if it desired to repeal Ordinance No. 3543-99, had to enact a *new ordinance* to repeal Ordinance No. 3543-99 and that that action had to be taken by city council within thirty days of the clerk's determination of sufficiency. Since no new ordinance was enacted, relators contend that city council's April 17 vote to rescind Ordinance No. 3543-99 was ineffective. As a consequence, the referendum on the ordinance must, relators contend, be voted on at the November 7 general election. We agree.

{¶ 21} Relators correctly observe that a new ordinance is generally required to expressly repeal an existing ordinance. *Reiff v. Hamilton City Council* (1972), 32 Ohio App.2d 224, 225, 61 O.O.2d 248, 249, 289 N.E.2d 358, 359; see, also,

8

*Bittinger v. Bolivar* (1990), 183 W.Va. 310, 314, 395 S.E.2d 554, 558; *St. Paul Citizens for Human Rights v. St. Paul City Council* (Minn.1979), 289 N.W.2d 402, 405. The general rule is supported by the rationale that "[t]he repeal of legislation has similar widespread effect upon the community and, *consistent with sound legislative operation*, must be subject to the same procedural requirements as positive enactments." (Emphasis added.) *Reiff*, 32 Ohio App.2d at 226, 61 O.O.2d at 249-250, 289 N.E.2d at 360.

{¶ 22} Nevertheless, respondents urge this court to find that city council was not required to enact a new ordinance to repeal Ordinance No. 3543-99, but instead was authorized, pursuant to Section 13.2, to repeal the ordinance simply by passing a motion to rescind. However, the language of Section 13.2 simply does not support respondents' position. Nowhere in Section 13.2 is city council authorized to repeal an ordinance without enacting a new ordinance. Section 13.2 simply provides the mechanism for challenging a legislative enactment of city council by referendum. Contrary to the respondents' assertions, Section 13.2 does not authorize, in contravention of Section 3.12, repeal of an ordinance or resolution simply by passing a motion to rescind.

{¶ 23} Further, we reject respondents' contention that it would be impractical and render Section 13.2 nugatory if Section 3.12 and other general charter provisions required that city council enact a new ordinance in order to repeal an existing zoning ordinance. Respondents ignore the clear language of Sections 3.12 and 13.2 and misconstrue the purpose of other charter provisions.

{¶ 24} Respondents' assertion that Section 3.12 must yield to the special thirty-day-repeal provision of Section 13.2 in order to avoid going through the entire legislative process a second time is misguided. In proposing an ordinance to repeal a newly enacted zoning ordinance, there would be no need, as respondents suggest, to hold another public hearing (Section 9.1), submit a proposed zoning ordinance to the planning commission (Section 8.8), or comply with the three-

reading rule (Section 3.12), when those processes have been completed prior to the passage of the zoning ordinance. As we indicated in *In re Election Contest of Democratic Primary Election Held May 4, 1999 for Nomination to the Office of Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 266, 725 N.E.2d 271, 278, it is our duty to construe legislation to avoid unreasonable or absurd results. Respondents' arguments, if accepted, would turn Section 13.2 on its head.

{¶ 25} The North Ridgeville City Charter speaks to the question before the court, and, consequently, it is a closed issue. The charter is the preeminent authority in this matter, and it is clear and unequivocal. Moreover, upon reflection, would anyone seriously contend that municipal governmental bodies should be able to repeal sections of their city code simply by using the vehicle of a motion and voice vote of the city council? The mischief that that could entail should be obvious even to a casual observer. Such a procedure is frightening to contemplate and would be questionable at best and dangerous at its worst. Therefore, we find that city council's April 17 action attempting to repeal Ordinance No. 3543-99 was not authorized and that, pursuant to Sections 3.12 and 13.2 of the North Ridgeville Charter, city council was required to enact a new ordinance to repeal the ordinance.

{¶ 26} Accordingly, we hold that the same procedural requirements that must be followed to enact an ordinance must be followed to repeal an ordinance. We therefore grant relators' requested writ of mandamus and order respondents to submit Ordinance No. 3543-99 to the electors of the city of North Ridgeville at the November 7, 2000 general election.

*Writ granted.*

RESNICK, F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., PFEIFER and COOK, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

**{¶ 27}** Relators have not established a clear legal right to have the ordinance submitted to the electorate or a corresponding clear legal duty on the part of respondents to do so.

**{¶ 28}** Section 13.2 of the North Ridgeville Charter specifies city council's authority after its clerk determines that a referendum petition is sufficient:

"Within thirty (30) days after the enactment by Council, of any ordinance or resolution which may be subject to a referendum under the laws of the State of Ohio, a petition signed by no less than ten percent (10%) of the total electors voting at the last preceding November election, may be filed with Council * * * by personally handing said petition to the Clerk of Council, requesting the ordinance or resolution be repealed or submitted to the vote of the electors. When said petition is filed, the Clerk of Council, shall within fourteen (14) days ascertain the sufficiency of the petition, and *if found sufficient, the Council shall, within thirty (30) days after sufficiency has been established, reconsider such ordinance or resolution. If Council fails to repeal said ordinance or resolution within such thirty (30) day period, the Council shall submit it to a vote of the electors at the next regular election occurring more than seventy-five (75) days after the filing of such petition.* If such petition is signed by at least twenty percent (20%) of such electors, the date of the election may be fixed therein, which may be a special election to be held at any time more than seventy-five (75) days after the filing of such petition." (Emphasis added.)

**{¶ 29}** Under Section 13.2 of the charter, once White determined on April 17 that the referendum petition was legally sufficient, the city council had thirty days to reconsider Ordinance No. 3543-99. If, during that period, council failed to repeal the ordinance, it had a duty to submit it to the electors at the November 7 election. On the same date that its clerk concluded that the petition was sufficient, the city council voted to rescind the ordinance.

11

**{¶ 30}** Section 3.12 of the charter, which prescribes general procedure for municipal legislation, states, "All legislative action shall be by ordinance or resolution except when otherwise required by the Constitution or the laws of the State of Ohio." Relators claim that council had to enact a *new ordinance* to repeal Ordinance No. 3543-99 within thirty days of White's determination of sufficiency and that council's April 17 vote on a mere motion to rescind Ordinance No. 3543-99 was thus ineffective, thereby entitling them to vote on the ordinance at the November 7 election.

**{¶ 31}** The general rule that, absent legislation to the contrary, a new ordinance is required to expressly repeal an existing ordinance is inapplicable here. Without any provision of the Ohio Constitution regarding the interpretation of the North Ridgeville Charter, the court may apply general interpretative rules concerning statutory construction. See *State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections* (1993), 67 Ohio St.3d 597, 600, 622 N.E.2d 329, 331; see, also, *State ex rel. Huebner v. W. Jefferson Village Council* (1995), 72 Ohio St.3d 589, 592, 651 N.E.2d 1001, 1003, reconsideration granted on other grounds (1995), 75 Ohio St.3d 381, 662 N.E.2d 339. Under one such general rule, codified at R.C. 1.51, except where a general provision is adopted after a conflicting special provision and there is a manifest intent that the general provision prevail, the special provision prevails. *State ex rel. Dublin Securities, Inc. v. Ohio Div. of Securities* (1994), 68 Ohio St.3d 426, 429-430, 627 N.E.2d 993, 996-997.

**{¶ 32}** Section 13.2 is a special provision that specifies city council's authority following a determination by its clerk that a referendum petition is sufficient, and the charter does not evidence any manifest intention that Section 3.12 prevail over Section 13.2 when council repeals an ordinance within the thirty-day period following its clerk's determination of sufficiency.

**{¶ 33}** In addition, the special thirty-day repeal provision of Section 13.2 would be rendered nugatory if Section 3.12 and other general charter provisions

required that city council enact a new ordinance in order to repeal the ordinance that is the subject of a sufficient referendum petition. See *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 127, 698 N.E.2d 987, 990 ("Municipal charters must be construed to *give effect to all separate provisions*"). (Emphasis added.) See, also, *State ex rel. Fite v. Aeh* (1997), 80 Ohio St.3d 1, 4, 684 N.E.2d 285, 287. That is because application of these general provisions would make it impossible for city council to repeal zoning ordinances that are the subject of valid referendum petitions within the thirty days specified by Section 13.2 of the charter. See Section 3.12 (in addition to requiring legislative action by ordinance or resolution, includes three-reading rule that cannot be dispensed with if ordinance pertains to zoning); Section 3.13 (nonemergency ordinances are not effective until thirty days after final passage by council, and any change in zoning ordinances cannot be declared an emergency measure that would be immediately effective); Section 8.8 (ordinances referring to zoning cannot be adopted until they have been first submitted to the planning commission for report and recommendation, and the commission has sixty days to submit a report and recommendation); and Section 9.1 (notice and hearing requirement for passage and amendment of any zoning ordinance).

{¶ 34} As relators themselves argue, "[t]o construe or allow the general [charter] provisions to prevail over these special provisions [of Section 13.2 of the charter] would completely frustrate the crucial timing interests of these provision[s]." In addition, relators further specifically assert that "*Charter Provision 13.2, a special provision*, governing the enactment of an ordinance repealing a referendum ordinance, *shall be an exception to the general provisions of* the Charter 8.8, 3.12, 3.13, [and] 9.1 * * *." (Emphasis added.) Like the three-reading requirement of Section 3.12 and the remaining requirements of Sections 3.13, 8.8, and 9.1 of the charter, the requirement of Section 3.12 that legislative action be by ordinance is also a general provision that must yield to the special thirty-day repeal provision of Section 13.2. This gives effect to Section 13.2 and

avoids a construction of the charter that would lead to unreasonable or absurd results. See *In re Election Contest of Democratic Primary Election Held May 4, 1999 for Nomination to the Office of Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 266, 725 N.E.2d 271, 278 (court's duty to construe statutes to avoid unreasonable or absurd results).

{¶ 35} Therefore, under Section 13.2 of the charter, the city council was authorized to repeal Ordinance No. 3543-99 by vote on a motion, and council did so in a timely manner on April 17. Because council repealed the ordinance that relators sought to be placed on the November 7 ballot, respondents have no duty to submit the ordinance to North Ridgeville electors at the November 7 election. Section 13.2, North Ridgeville Charter.

{¶ 36} In addition, relators received precisely what they requested in their letter attached to their referendum petition, *i.e., either the repeal of the ordinance* or its submission to the electors. In fact, relators' counsel initially agreed that the city council's April 17 action repealed the ordinance, and one of relators agreed that when city council repealed the ordinance, relators got what they desired. A writ of mandamus will not issue to compel an act that has already been performed. *State ex rel. Lee v. Montgomery* (2000), 88 Ohio St.3d 233, 237, 724 N.E.2d 1148, 1151.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____

**Cook, J., dissenting.**

{¶ 37} Because I find that the doctrine of laches should bar relators' claims, I would not reach the merits of the instant case. Accordingly, I respectfully dissent.

{¶ 38} As the majority correctly notes, when relators have failed to exhibit the required diligence and promptness in election-related cases, this court has applied laches and denied extraordinary relief. See, generally, *State ex rel. White v. Franklin Cty. Bd. of Elections* (1992), 65 Ohio St.3d 45, 48, 600 N.E.2d 656, 659. For the following reasons, I conclude that application of laches is warranted under the facts of this case.

{¶ 39} First, relators bear the burden of establishing that they acted with the requisite diligence in filing their claim. *State ex rel. Manos v. Delaware Cty. Bd. of Elections* (1998), 83 Ohio St.3d 562, 564, 701 N.E.2d 371, 373. They have failed to meet this burden. We have held that a delay as brief as nine days can preclude our consideration of the merits of an expedited election case. *Paschal v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 141, 656 N.E.2d 1276. Here, relators failed to file this action until nearly four months after the April 17, 2000 rescission of the ordinance, even though they knew or should have known of the basis of their present claim. This is not a case in which prejudice to respondents' ability to prepare and defend against relators' claims would have occurred "even 'under the best of circumstances.'" *State ex rel. Ascani v. Stark Cty. Bd. of Elections* (1998), 83 Ohio St.3d 490, 494, 700 N.E.2d 1234, 1237, quoting *State ex rel. Squire v. Taft* (1994), 69 Ohio St.3d 365, 369, 632 N.E.2d 883, 886. Rather, this is a case in which prejudice arose as a result of unjustified tardiness. Because relators delayed filing this action, they "made this case an expedited election matter under S.Ct.Prac.R. X(9), thereby restricting respondents' time to prepare and defend against [relators'] claims." *State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections* (1997), 80 Ohio St.3d 182, 186, 685 N.E.2d 507, 510.

**{¶ 40}** Relators lack any justifiable excuse for the majority of this delay; some of the relators themselves testified that they knew of no reason for their counsel's delay in filing this mandamus action. If relators cannot adequately explain their lack of diligence in filing, then this court should not endeavor to supply an excuse for them.

**{¶ 41}** Second, by not applying laches, the majority opinion undermines the purpose of S.Ct.Prac.R. X(9), which is to " 'incorporate an expedited election schedule for the presentation of evidence and briefs in election cases filed in that time period to assist the court in resolving such cases promptly.' " *State ex rel. Landis v. Morrow Cty. Bd. of Elections* (2000), 88 Ohio St.3d 187, 189, 724 N.E.2d 775, 777, quoting *SuperAmerica*, 80 Ohio St.3d at 187, 685 N.E.2d at 511. The purpose of the rule is not to provide a party with a strategic advantage; relators should not be able to delay filing an election case merely to restrict respondents' time to gather evidence and file a merit brief. Indeed, after relators filed this case, they filed a motion for a protective order, complaining that respondents had given relators too little notice to depose them, although respondents had little time to obtain discovery in order to file evidence under the expedited schedule of S.Ct.Prac.R. X(9). Similar maneuvering has been labeled gamesmanship. See *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 113, 712 N.E.2d 696, 701; *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 636, 716 N.E.2d 704, 711.

**{¶ 42}** Third, the majority makes much of respondents' conduct in asserting that a significant portion of relators' delay was essentially caused by respondents. I disagree. Any minimal delay that might have been caused by the law director's inclusion of an additional ground of insufficiency of the referendum petition in his July 6 rejection of relators' July 3 demand did not excuse relators' failure to file this action between April 17 and July 6. *Ryant Commt.*, 86 Ohio St.3d at 114, 712 N.E.2d at 702; *Manos*, 83 Ohio St.3d at 563, 701 N.E.2d at 372. In fact, relators'

July 13 letter shows that relators had already rebutted this new argument by that date, thereby making any further "extensive analysis" of the petition from July 13 to August 11 unnecessary. Further, the statement by certain city officials that Resolution No. 894-2000 had already rezoned the property did not justify relators' lengthy delay in asserting their claimed rights in relation to Ordinance No. 3543-99, a different enactment. If anything, the confusion on the part of both parties that the majority recounts suggests the need to seek judicial resolution as soon as the thirty-day reconsideration period had expired. This matter could have, and should have, been filed earlier.

{¶ 43} Relators erroneously cite nonelection cases to support their contention that the "equitable affirmative defense" of laches is inapplicable. But laches is not an affirmative defense in election cases; instead, as noted, the burden rests upon relators in election cases to establish that they instituted their action with the required diligence and promptness. *Ascani*, 83 Ohio St.3d at 494, 700 N.E.2d at 1237; *Manos*, 83 Ohio St.3d at 564, 701 N.E.2d at 373.

{¶ 44} I would therefore deny the writ.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____