[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 472.]

**THE STATE EX REL. DITMARS *v*. MCSWEENEY, CLERK, ET AL.**

[Cite as *State ex rel. Ditmars v. McSweeney*, 2002-Ohio-997.]

*Elections—Initiative petitions—Mandamus sought to compel City Clerk of Columbus to serve a certified copy of Columbus Ordinance No. 1760.01 concerning protection and preservation of the Big Darby watershed on the Franklin County Board of Elections—Writ granted, when.*

(No. 02-297—Submitted March 5, 2002—Decided March 8, 2002.)

IN MANDAMUS.

————————————

*Per Curiam.*

{¶ 1} Relator, David Ditmars, is a resident of the city of Columbus, Ohio, and is a member of a petitioning committee that was formed to circulate an initiative petition. The initiative petition contains a proposed ordinance entitled "Ordinance to Protect and Preserve the Big Darby Watershed."[1] The proposed ordinance provides that for five years after the ordinance becomes effective, Columbus may not permit within the Big Darby watershed (1) any extension of an existing, or construction of any new, public drinking-water delivery system or public sewer system; (2) any extension of an existing, or construction of any new, private sewage system; and (3) any material modification of the natural surface water drainage topography.

{¶ 2} On March 26, 2001, Ditmars filed a certified precirculation copy of the initiative petition with the office of respondent Timothy McSweeney, the City Clerk of Columbus. On October 3, 2001, Ditmars and others filed the initiative

————————————

1. For purposes of the proposed ordinance, the Big Darby watershed is defined as the area of land in which the natural surface water drains into the Big Darby Creek, the Hellbranch Run, the Clover Groff Ditch, or the Hamilton Ditch.

petition, which consisted of 888 part-petitions containing 12,221 signatures, with the city clerk's office. On each of the part-petitions, the circulator signed the preprinted circulator statement, which had the following declaration:

"I, _____ (printed name of circulator), declare under penalty of election falsification that I am a qualified elector of the State of Ohio and reside at the address appearing below my signature hereto; that I am the circulator of the foregoing petition paper containing _____ (number) signatures; that I witnessed the affixing of every signature, that all signers were to the best of my knowledge and belief qualified to sign, and that every signature is to the best of my knowledge and belief the signature of the person whose signature it purports to be." See R.C. 3501.38(E).

{¶ 3} None of the circulator statements on the part-petitions was notarized or otherwise sworn to by the circulator under oath.

{¶ 4} McSweeney sent the petition to the Franklin County Board of Elections to verify the number of valid signatures of registered Columbus electors. On October 11, 2001, the board returned the petition to McSweeney with its report that the petition contained more than the required number of valid signatures.

{¶ 5} On October 15, 2001, McSweeney certified the petition and submitted the proposed ordinance to the Columbus City Council. On October 22, the city council unanimously voted not to enact the proposed ordinance. The city council then immediately adopted Ordinance No. 1760-01, which was emergency legislation to submit the proposed ordinance concerning the Big Darby watershed to the "electors of the City of Columbus, Ohio pursuant to Section 44 of the City Charter for their approval or rejection at an election to be held May 7, 2002." The ordinance further provided that the "Clerk of this Council shall forthwith serve a certified copy of this Ordinance on the Franklin County, Ohio Board of Elections." Ordinance No. 1760-01 also acknowledged that "pursuant to Columbus City Charter Section 44 Council is required forthwith to order and provide for the

2

submission of such proposed ordinance which has been rejected to a vote of the electors of the City at the next ensuing election to be held not less than sixty (60) nor more than one hundred twenty (120) days thereafter; or, if no such election will be held, at the next ensuing election." On October 23, Columbus Mayor Michael Coleman signed Ordinance No. 1760-01.

{¶ 6} McSweeney did not, as required by Ordinance No. 1760-01, serve a certified copy of that ordinance on the board of elections. Instead, by letter dated February 13, 2002, almost four months after the city council ordered him to serve the certified copy of the ordinance, McSweeney notified members of the petitioning committee, including Ditmars, that he would not certify the initiative to the board of elections because the petition was insufficient and invalid. McSweeney stated that the Columbus City Attorney had reviewed the petition and concluded that it was defective because it lacked the circulators' affidavits required by Columbus Charter Section 42.

{¶ 7} On February 15, 2002, Ditmars instituted this expedited election case. Ditmars requested a writ of mandamus to compel McSweeney and the board of elections to "fulfill all of the legal duties imposed upon [them] under Columbus City Council Ordinance No. 1760-01" and "to specifically compel the Board to place the Proposed Ordinance on the City of Columbus May 7, 2002 ballot." We granted the motion of Rocky Lee Blauser and Blauser Family Partnership[2] to intervene as respondents, and the parties filed a joint application to dismiss the board of elections from the case because the action was premature as to the board, which had not had the initiative petition certified to or filed with it. On March 5, we granted the joint application and dismissed the board of elections from this case. McSweeney and the intervening respondents filed motions to dismiss, and the

---

2. Rocky Lee Blauser is a partner in Blauser Farm Partnership, which owns a two-hundred-three-acre farm located within the Big Darby watershed, and would be adversely affected by the enactment of the proposed ordinance.

parties filed evidence and briefs pursuant to the expedited election schedule in S.Ct.Prac.R. X(9).

{¶ 8} This cause is now before the court for a consideration of the merits.

{¶ 9} Ditmars requests a writ of mandamus to compel McSweeney to fulfill his legal duties under Columbus Ordinance No. 1760-01, *i.e.*, to "forthwith serve a certified copy of [the] Ordinance on the Franklin County, Ohio Board of Elections." In order to be entitled to the requested extraordinary relief in mandamus, Ditmars must establish a clear legal right to have McSweeney comply with Ordinance No. 1760-01, a corresponding clear legal duty on the part of McSweeney to so comply, and the lack of an adequate legal remedy in the ordinary course of the law. *State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections* (2001), 93 Ohio St.3d 529, 532, 757 N.E.2d 314. Ditmars has established that he lacks an adequate remedy in the ordinary course of the law, so the dispositive issue is whether he has established his right to the requested relief and McSweeney's duty to provide it.

Sufficiency and Validity of Initiative Petition: Affidavit Requirement of Columbus Charter

{¶ 10} Ditmars first asserts that McSweeney lacked authority to refuse to certify the initiative to the board of elections because his stated reason for so refusing is erroneous. McSweeney refused to certify the initiative to the board of elections because the petition lacked the circulators' affidavits required by the charter. Section 42 of the Columbus Charter specifies that affidavits of circulators must be attached to each initiative petition paper:

"The signatures to any such petition need not all be appended to one paper, but *to each such paper there shall be attached an affidavit by the circulator thereof stating the number of signers to such part of the petition and that such signatures were appended thereto in the presence of affiant*." (Emphasis added.)

{¶ 11} Ditmars contends that although the circulator statements in the initiative petition were unsworn and not declared in the presence of an officer

4

authorized to administer oaths, they complied with applicable legal provisions because Section 42 of the Columbus Charter does not use the terms "notary" and "notarization," Section 42 does not conflict with R.C. 3501.38(E),[3] and the circulator statements contained in the initiative petition fully complied with R.C. 3501.38(E). These contentions are meritless.

{¶ 12} The word "affidavit" is not defined in the Columbus Charter. Undefined language used in a municipal charter must be construed according to its ordinary and common usage. *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 5, 716 N.E.2d 1114. Applying the ordinary and common meaning of the word here, an "affidavit" is a "voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths." Black's Law Dictionary (7 Ed.1999) 58; see, also, Webster's Third New International Dictionary (1986) 35, defining "affidavit" as "a sworn statement in writing made esp. under oath or on affirmation before an authorized magistrate or officer." Therefore, the mere fact that Section 42 of the Columbus Charter does not include terms like "notary" or "notarization" in addition to "affidavit" does not obviate the requirement that circulators of initiative petitions must declare under oath before an officer authorized to administer oaths the number of signers on the part petitions and that those signatures were made in their presence.

{¶ 13} Further, Section 42 of the Columbus Charter *does conflict* with R.C. 3501.38(E) insofar as the charter provision requires circulator affidavits and the statute does not. Because the charter provision conflicts with the statute on the affidavit requirement, the charter provision prevails. " 'In matters of local self-government, if a portion of a municipal charter expressly conflicts with parallel

---

3. R.C. 3501.38(E) provides, "On each petition paper, the circulator shall indicate the number of signatures contained on it, and shall sign a statement made under penalty of election falsification that the circulator witnessed the affixing of every signature, that all signers were to the best of the circulator's knowledge and belief qualified to sign, and that every signature is to the best of the circulator's knowledge and belief the signature of the person whose signature it purports to be."

state law, the charter provisions will prevail.' " *State ex rel. Fenley v. Kyger* (1995), 72 Ohio St.3d 164, 165, 648 N.E.2d 493, quoting *State ex rel. Lightfield v. Indian Hill* (1994), 69 Ohio St.3d 441, 442, 633 N.E.2d 524; Sections 3 and 7, Article XVIII, Ohio Constitution.

{¶ 14} Based on the foregoing, McSweeney correctly concluded that the initiative petition was insufficient and invalid because it did not comply with the affidavit requirement of Columbus Charter Section 42. This conclusion is consistent with precedent. See *State ex rel. Van de Kerkhoff v. Dowling* (1991), 61 Ohio St.3d 55, 572 N.E.2d 653 (referendum petition properly held to be insufficient because it failed to comply with city charter requirement of circulator affidavits); *State ex rel. Humble v. Brown* (1977), 52 Ohio St.2d 9, 6 O.O.3d 77, 368 N.E.2d 294 (local option election petition containing statement of circulator did not satisfy statutory requirement of a circulator affidavit); *State ex rel. Evergreen Co. v. Franklin Cty. Bd. of Elections* (1976), 48 Ohio St.2d 29, 2 O.O.3d 126, 356 N.E.2d 716 (lack of statement that notaries placed referendum petition circulators under oath established failure to comply with statutory affidavit requirement).

Sufficiency and Validity of Initiative Petition:  Liberal Construction of Municipal Initiative Provisions

{¶ 15} Ditmars contends that liberal construction of the Columbus Charter requirements for initiative petitions supports his claim that the petition met all applicable legal requirements. It is true that provisions for municipal initiative or referendum are liberally construed so as to permit rather than preclude the exercise of this power. *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 230, 736 N.E.2d 886.

{¶ 16} Nevertheless, the settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is. See *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 539, 757 N.E.2d 319. Section 42

6

of the Columbus Charter does not expressly state that mere substantial compliance with its circulator-affidavit requirement is acceptable, and even if it did, the initiative petition filed by Ditmars and other petitioners did not substantially comply with that requirement. See *Van de Kerkhoff*, 61 Ohio St.3d at 59-60, 572 N.E.2d 653 (an unsworn circulator statement in a referendum petition does not comply, either strictly or substantially, with municipal charter requirement of a circulator affidavit).

{¶ 17} Therefore, Ditmars's reliance on the general rule of liberal construction of municipal initiative provisions does not modify the conclusion that the petition is invalid because it failed to comply with the unequivocal circulator-affidavit requirement of Section 42 of the Columbus Charter. See *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 186, 724 N.E.2d 771 (no need to liberally construe a statute whose meaning is unequivocal and definite).

### Sufficiency and Validity of Initiative Petition: Estoppel

{¶ 18} Ditmars asserts that McSweeney, who could have discerned the lack of circulator affidavits in the petition earlier, "waited until the last moment to kill the election."

{¶ 19} McSweeney, however, is not estopped from raising the insufficiency and invalidity of a petition merely because he waited over four months from the date the signed petition was filed with him to raise the Section 42 defect. Estoppel does not apply against election officials in the exercise of governmental functions. See *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections* (1997), 80 Ohio St.3d 302, 307, 686 N.E.2d 238. In other words, the petitioners' duty to comply with the affidavit requirement of the charter is not conditioned upon receiving notice from the city clerk that the duty exists. See *State ex rel. Jedlicka v. Cuyahoga Cty. Bd. of Elections* (1969), 20 Ohio St.2d 13, 15, 49 O.O.2d 108, 251 N.E.2d 862 (R.C. 3517.10 "imposes a duty on every candidate to file a

statement of receipts and expenses. That duty is explicit. It is not conditioned upon receiving the notice from the board that the duty exists. Therefore, the failure of the board to notify relator does not excuse him from his requirement to file his statement of receipts and expenses").

Authority of City Clerk to Determine Sufficiency and Validity of Initiative Petition Following Enactment of Ordinance Ordering Certification of Initiative

**{¶ 20}** Ditmars next contends that even if McSweeney correctly concluded that the initiative petition was invalid because it failed to comply with Section 42 of the Columbus Charter, McSweeney no longer had any authority to so conclude after the city council had enacted an ordinance ordering him to certify the ordinance to the board of elections. McSweeney counters that under R.C. 731.28 and Section 42 of the Columbus Charter, McSweeney retained the authority to refuse to certify the initiative to the board of elections.

**{¶ 21}** The statutory procedure governing municipal initiative and referendum in R.C. 731.28 through 731.41 applies to municipalities where the charter incorporates general law by reference, except where the statutory procedure conflicts with other charter provisions. *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 38, 671 N.E.2d 1. Municipal charters must be construed to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible. *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 127, 698 N.E.2d 987.

**{¶ 22}** R.C. 731.28 provides the following procedure for municipal initiative petitions: (1) when a petition for an initiated ordinance or other measure is signed by the required number of electors, the city auditor or village clerk has a mandatory, ministerial duty, after ten days from the date the petition was filed, to transmit the petition and a certified copy of the text of the proposed ordinance or other measure to the board of elections; (2) within ten days of receiving the petition, the board of elections is required to determine the number of electors of the

municipal corporation who signed the petition and return the petition to the auditor or clerk together with a statement attesting to the number; (3) the auditor or clerk then exercises limited, discretionary authority to determine the sufficiency and validity of the petition; and (4) if the auditor or clerk certifies the sufficiency and validity of the initiative petition to the board of elections, the board must submit the proposed ordinance or other measure at the next succeeding general election occurring after seventy-five days from the certification to the board of elections, but only if the board determines under R.C. 3501.11(K) and 3501.39 that the petition is sufficient and valid.  See *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 230-231, 685 N.E.2d 754.

{¶ 23} The Columbus Charter initiative procedure, which specifies in Section 43 that initiative petitions are filed with the city clerk rather than the city auditor, differs from the foregoing statutory procedure in several significant respects:  (1) within ten days after the filing of the initiative petition, the city clerk certifies the number of signatures and submits the proposed ordinance to the city council at its next regular meeting (Section 43); (2) if the petition contains the required number of signatures, the city council refers the proposed ordinance to a committee to report at the next regular council meeting (Section 44); (3) if the council then either fails to take action or rejects the proposed ordinance in whole or in part, it must order the submission of the proposed ordinance to the electorate at the next  election to be held not less than sixty nor more than one hundred and twenty days thereafter (Section 44); and (4) the ordinance submitting the proposed ordinance to a vote of the electorate shall be certified by the city clerk to the proper election officials immediately upon passage by council (Section 200).  In addition, Section 42 of the charter provides, "The petition and signatures thereto appended, so verified, shall be presumed to be in all respects sufficient, unless not later than forty days before the election, it shall be otherwise proven."

**{¶ 24}** After construing these provisions *in pari materia* and giving effect to all of the applicable provisions, it is evident that although the charter does not completely negate the statutory procedure, it nonetheless alters that procedure. R.C. 731.28 provides that city auditors and village clerks must exercise their limited, discretionary authority to determine the sufficiency and validity of initiative petitions when they receive the petitions back from the board of elections. Here, the city clerk received the petition back from the board of elections before it had a duty under the charter to certify the number of signatures and submit the proposed ordinance to the city council. Columbus Charter, Section 43. McSweeney should have then reviewed the petition and exercised his limited, discretionary authority to determine the petition's sufficiency and validity. Instead, he waited until after council passed an ordinance ordering him to serve a certified copy of the proposed ordinance to the board of elections.

**{¶ 25}** Adopting respondents' contrary interpretation, which would permit the city clerk to, in effect, trump the city council's enactment of an ordinance and the mayor's approval thereof, would render nugatory the charter provisions concerning council's duties concerning initiative matters. And although Section 42 of the charter indicates that the municipal official or entity's determination of sufficiency concerning a petition may be made as late as forty days before an election, it does not purport to negate the other charter provisions.

**{¶ 26}** Moreover, accepting respondents' argument that the city clerk can determine sufficiency even after he has been ordered by city council to serve a certified copy of the ordinance on the board of elections would contravene the general rule that only a new ordinance can repeal an existing ordinance. *State ex rel. Commt. for the Referendum of Ordinance No. 3543-00 v. White* (2000), 90 Ohio St.3d 212, 217, 736 N.E.2d 873. Council enacted no new ordinance repealing Ordinance No. 1760-01 here.

{¶ 27} Therefore, construing the pertinent charter and statutory provisions *in pari materia*, McSweeney lacked authority following the enactment of Ordinance No. 1760-01 to determine that the petition was insufficient. At the time that the ordinance was enacted, he had a duty under the charter to *immediately* certify the ordinance to the proper election officials. Columbus Charter, Section 200. In fact, the ordinance itself ordered McSweeney to *forthwith* serve a copy of the ordinance on the board of elections. McSweeney did neither despite his clear legal duty to do so under the charter and the ordinance.

Laches

{¶ 28} The intervening respondents assert that because Ditmars relies upon the October 23 mayoral approval of the October 22 enactment of Ordinance No. 1760-01 to support his claim that McSweeney had a duty to serve a certified copy of the ordinance on the board of elections, Ditmars's expedited election action for extraordinary relief in mandamus is barred by laches. This assertion is meritless.

{¶ 29} It is axiomatic that relators in election cases must act with the utmost diligence. *State ex rel. Newell v. Tuscarawas Cty. Bd. of Elections* (2001), 93 Ohio St.3d 592, 595, 757 N.E.2d 1135. But there is no evidence in this case that Ditmars delayed in asserting his claims here. He could have reasonably relied upon the passage of Ordinance No. 1760-01, which indicated that the initiative was proceeding to be placed upon the May 7 ballot, until McSweeney notified him by letter dated February 13, 2002, that the initiative had not been certified to the board of elections. Ditmars then filed this action within two days of the notification letter. And the date for the preparation of absentee ballots has not yet passed. See R.C. 3509.01. Therefore, under these circumstances, laches does not bar Ditmars's mandamus claim.

Conclusion

{¶ 30} Based on the foregoing, Ditmars has established entitlement to the requested extraordinary relief in mandamus. He has a clear legal right under

Ordinance No. 1760-01 and the Columbus Charter to have McSweeney immediately serve a certified copy of the ordinance on the board of elections, and McSweeney has a corresponding clear legal duty to do so. We therefore grant Ditmars a writ of mandamus to compel McSweeney to serve a certified copy of Ordinance No. 1760-01 on the board of elections.[4]

*Writ granted.*

MOYER, C.J., F.E. SWEENEY and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, RESNICK and COOK, JJ., concur in judgment.

PFEIFER, J., dissents.

_____

*Phillip L. Harmon*, for relator.

*Janet E. Jackson*, Columbus City Attorney, *Daniel W. Drake* and *Susan E. Ashbrook*, Assistant City Attorneys, for respondent Timothy McSweeney, Columbus City Clerk.

*Vorys, Sater, Seymour & Pease L.L.P., Bruce L. Ingram* and *Matthew R. Wilson; Crabbe, Brown, Jones, Potts & Schmidt* and *Larry H. James*, for intervening respondents.

_____

4. By so holding, we are not ordering the board of elections to place this initiative on the May 7 ballot. In fact, Ditmars concedes that the board of elections is authorized to consider the sufficiency and validity of the initiative petition. And nothing in the Columbus Charter, R.C. 731.28, or precedent negates the board's statutory authority to determine the sufficiency of the petition. See *Sinay*, 80 Ohio St.3d at 231, 685 N.E.2d 754 ("If the General Assembly had intended to completely divest boards of elections, which are the local authorities best equipped to gauge compliance with election laws, of their authority to determine the sufficiency and validity of these petitions, it would have done so with unambiguous language"); see, also, *State ex rel. Kennedy v. Cuyahoga Cty. Bd. of Elections* (1976), 46 Ohio St.2d 37, 75 O.O.2d 100, 346 N.E.2d 283, holding that because nothing in the municipal charter referred to the board of elections or purported to negate the board's duties, the board retained its full authority. Finally, the parties jointly dismissed the board of elections from this mandamus action. Therefore, the board of elections retains its authority to determine the sufficiency and validity of the initiative petition.