[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Brill v. Lorain Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-4990.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-4990

THE STATE EX REL. BRILL ET AL. *v.* LORAIN COUNTY BOARD OF ELECTIONS ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Brill v. Lorain Cty. Bd. of Elections*, Slip Opinion No. 2024-Ohio-4990.]

*Elections—Mandamus—R.C. 731.32 requires strict compliance—Board of elections applied applicable law in sustaining intervening respondents' protest—Writ denied.*

(No. 2024-1313—Submitted October 8, 2024—Decided October 16, 2024.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, and DETERS, JJ. BRUNNER, J., concurred in judgment only, with an opinion joined by DONNELLY and STEWART, JJ.

**Per Curiam.**

{¶ 1} Relators, Marilyn Brill, Carrie Ott, Gerald W. Phillips, Jean Anderson, Adam Wilson, and Concerned Vermilion Citizens, L.L.C., seek a writ of mandamus ordering respondents, Lorain County Board of Elections and Director Paul R. Adams (collectively, "the board"), to place a zoning-amendment referendum on the November 5, 2024 general-election ballot. After the referendum was certified for the ballot, the board sustained a protest of intervening respondents, DBR Commercial Realty, L.L.C., and Kathryn Craig and removed the referendum from the ballot.

{¶ 2} In addition to their evidence and merit briefs, the parties have filed various motions. Intervening respondents have moved to strike three exhibits and two affidavits that relators filed as evidence in this case. Relators have filed their own motion to strike evidence of intervening respondents and a motion for leave to file rebuttal evidence. Relators have also filed a motion for leave to amend the case caption of their complaint and have requested oral argument.

{¶ 3} Because relators failed to strictly comply with R.C. 731.32, we deny the writ. We deny both motions to strike, deny relators' motion for leave to file rebuttal evidence and relators' request for oral argument, and grant relators' motion to amend the case caption.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Municipal Referendum Procedure

{¶ 4} The referendum procedure for cities is set forth in R.C. Chapter 731. Under R.C. 731.32, whoever files a referendum petition against a municipal ordinance "shall, before circulating such petition, file a certified copy of the proposed ordinance . . . with the city auditor." Under R.C. 731.29, a "'certified copy' means a copy containing a written statement attesting that it is a true and exact reproduction of the original ordinance or measure." The referendum proponents must then circulate the petition and within 30 days of the date of the

ordinance's passage, submit a petition to the city auditor signed by at least 10 percent of the number of city electors who voted for governor in the last general election for governor. *Id*.

{¶ 5} Upon receiving the petition, the auditor "shall, after ten days, and not later than four p.m. on the ninetieth day before the day of election, transmit a certified copy of the text of the ordinance or measure to the board of elections." *Id.* Along with the petition, the auditor must transmit to the board a certified copy of the ordinance. *Id.* Within ten days, the board of elections must examine and attest to the number of valid signatures on the petition and return it to the city auditor. *Id.* The board returns the petition to the auditor or clerk, who exercises limited discretionary authority to determine the sufficiency and validity of the petition. *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 2005-Ohio-5061, ¶ 14. If the board determines that the signature requirement has been satisfied and the auditor certifies the sufficiency and validity of the petition, the board must then submit the referendum to the voters "at the next general election occurring subsequent to ninety days after the auditor or clerk certifies the sufficiency and validity of the petition to the board of elections." R.C. 731.29.

**B. Proposed Referendum of Ordinance 2024-29**

{¶ 6} On June 10, 2024, the Vermilion City Council adopted Ordinance 2024-29, which rezoned approximately 300 acres of property from "R-1 Estate Residence District and PUD Planned Unit Development" to "PUD Planned Unit Development." Relators sought to place a referendum on Ordinance 2024-29 on the November 5, 2024 general-election ballot. To that end, on June 18, relator Brill requested a certified copy of Ordinance 2024-29 from Gwen Fisher, the clerk of the Vermilion City Council. That same day, Fisher gave three certified copies of the ordinance to Brill.

{¶ 7} The parties dispute exactly what Fisher gave Brill. According to Brill, Fisher gave her three copies of the ordinance, each consisting of ten single-sided

3

pages. Fisher, however, says that she gave Brill three copies of the ordinance, consisting of ten pages each, of which two pages were single-sided and eight pages were double-sided. According to Fisher, a full copy of Ordinance 2024-29 consists of "the first two pages of the Ordinance and eight double-sided sheets of exhibit A of the Ordinance, which the Ordinance specifically references in the first 'Whereas' paragraph as 'attached hereto made a part hereof.' "

{¶ 8} In an effort to comply with R.C. 731.32, on June 20, relator Phillips filed with Vermilion Finance Director Amy Hendricks[1] what he claimed was a certified copy of Ordinance 2024-29. Phillips did not file what Fisher had given to Brill; rather, Phillips "added a few pages of the legal descriptions which appeared to be missing" from the copies Fisher had provided. Phillips also filed an affidavit in which he attested that the copy of the ordinance he filed was "a true and accurate copy of Ordinance 2024-29 passed by City Council and signed by the Mayor." However, two pages of the legal descriptions attached to the ordinance were missing from the copy Phillips filed: the signature page of a quitclaim deed regarding a parcel of rezoned property and one page of the legal description of another parcel of rezoned property.

{¶ 9} On July 10, relators filed with Hendricks a referendum petition regarding Ordinance 2024-29. On July 31, the board certified that relators' petition contained enough signatures to qualify for placement on the November 5 general-election ballot. The following day, Hendricks certified the referendum to the board for placement on the November 5 general-election ballot. *See* R.C. 731.29 (the board of elections shall submit a referendum to electors at the next general election

---

1. In Vermilion, the finance director serves as the municipal fiscal officer. *See* Vermilion City Charter, art. V, § v-4. As such, the Vermilion finance director is the equivalent of a city auditor for purposes of R.C. 731.32. *See State ex rel. Nauth v. Dirham*, 2020-Ohio-4208, ¶ 15, fn. 1. Respondents do not contest that Hendricks is the proper official with whom to file the certified copy required by R.C. 731.32.

occurring "subsequent to ninety days after the auditor or clerk certifies the sufficiency and validity of the petition to the board of elections").

### C. The Protest

**{¶ 10}** On August 20, intervening respondents filed with the board a protest against the referendum petition.[2] The basis for the protest was that relators "failed to file a certified copy of the full ordinance with the Vermilion City Finance Director prior to circulating the petition, as required by [R.C.] 731.32." The board held a protest hearing on September 12.

**{¶ 11}** At the protest hearing, relator Phillips conceded that the copy of the ordinance he filed before circulating the referendum petition was not a full and correct copy of the ordinance. Phillips argued, however, that Fisher had provided an incomplete copy of the ordinance when Brill requested it. Brill likewise testified that pages were missing from the copy of the ordinance she received from Fisher on June 18.

**{¶ 12}** According to Brill and Phillips, relators believed they had corrected the inaccurate copies of the ordinance on their own. Phillips told the board that he went to the Lorain County Recorder's Office to obtain the two or three deed pages that he thought were missing from the copies of the ordinance that Fisher had provided. Phillips then included those pages with the copy of the ordinance he filed with the finance director to comply with R.C. 731.32. However, by Phillips's own admission, two pages remained missing from the so-called "certified copy" he filed with Finance Director Hendricks on June 20.

**{¶ 13}** At the conclusion of the hearing, the board voted unanimously to sustain the protest, thereby removing the referendum from the November 5 general-election ballot. In explaining his vote, board member Anthony Giardini surmised that Fisher had "inadvertently left some pages out" when she made copies of the

---

2. Intervening respondent DBR Commercial Realty owns the property that is the subject of Ordinance 2024-29. Intervening respondent Craig is a registered voter in Vermilion.

ordinance for Brill. Regardless of what Fisher gave to Brill, however, Giardini acknowledged that this court's precedent holds that the copy that must be filed under R.C. 731.32 has "to be exact." Board Chair Marilyn Jacobcik added that the law in this case "does require strict compliance in this area," a standard that does not permit the board to err on the side of placing the referendum on the ballot. Strict compliance, said Jacobcik, meant that the board had no choice but to sustain the protest.

{¶ 14} Relators commenced this expedited election action on September 19, seeking a writ of mandamus ordering the board to place the referendum on Ordinance 2024-29 on the November 5, 2024 general-election ballot. Intervening respondents filed a motion to intervene, which this court granted. 2024-Ohio-4760.

{¶ 15} In addition to their evidence and merit briefs, the parties have filed several motions. Intervening respondents filed a motion to strike three exhibits and two affidavits that relators submitted as evidence. Relators oppose the motion to strike their evidence and have also moved to strike one of the intervening respondents' exhibits and the affidavit of Fisher that was submitted at the protest hearing. Relators have also filed a motion for leave to file rebuttal evidence, a motion for leave to amend the caption to their complaint instanter, and a request for oral argument.

## II. ANALYSIS

### A. Request for Oral Argument

{¶ 16} We deny relators' request for oral argument for several reasons. First, relators do not explain why this case is worthy of oral argument. Second, because this is an expedited election case, time is of the essence, and oral argument would further delay a decision. And finally, this case presents no novel questions of law. At its core, this case involves a fact-intensive question of whether relators strictly complied with an election statute.

**B. Motion for Leave to Amend Caption Instanter**

{¶ 17} Intervening respondents argue that this court may dismiss relators' petition for failure to bring this action "in the name of the state on relation of person applying," as required by R.C. 2731.04. Relators' caption on their complaint named as relators "State of Ohio ex rel. City of Vermilion; Concern [sic] Vermilion Citizens LLC; Marilyn Brill" and then listed Brill, Carrie Ott, Gerald W. Phillips, Jean Anderson, and Adam Wilson. Intervening respondents argue that according to the caption, "the petition is brought in the name of the state on relation of [the] City of Vermilion, which cannot be true"[3] and that none of the other named relators are specifically tied to the "State ex rel." part of the caption. In response, relators have filed a motion for leave to amend instanter the caption of their complaint to remove the reference to the City of Vermilion as a relator and to make clear that they bring this action in the name of the State on the relation of Marilyn Brill, Carrie Ott, Jean Anderson, Adam Wilson, Gerald W. Phillips, and Concerned Vermilion Citizens, L.L.C. Neither intervening respondents nor the board responded to the motion to amend the caption.

{¶ 18} We grant relators' motion to amend the case caption. *See, e.g., State ex rel. Rust v. Lucas Cty. Bd. of Elections*, 2003-Ohio-5643, ¶ 6 (granting leave to amend caption after respondent raised the issue in a motion to dismiss); *State ex rel. Thomas v. Wood Cty. Bd. of Elections*, 2024-Ohio-379, ¶ 20 (granting relator's motion to amend caption to add "State ex rel." in expedited election case). Accordingly, we order that the caption of this case is amended to be "State ex rel. Brill et al. v. Lorain Cty. Bd. of Elections et al."

**C. Motions to Strike**

{¶ 19} Intervening respondents have moved to strike relators' exhibits I, K, and L, and the affidavits of Drew Werley and Brill, which relators filed as evidence

---

3. The complaint contains no allegations to indicate that the city is a relator seeking relief in this case.

in this case. Exhibit I consists of 17 affidavits from circulators of relators' referendum petition; exhibit K includes the agenda and minutes of the board's July 16 and August 15, 2024 meetings, sample ballot language for the referendum, and informational documents related to conducting the 2024 general election; exhibit L consists of emails from the board to relator Phillips sent the day after the protest hearing, in which the board forwarded documents that had been provided to intervening respondents' counsel before the filing of the protest.

{¶ 20} Intervening respondents argue that this evidence should be stricken because none of it was presented to the board and therefore cannot be germane to the issue of whether the board abused its discretion or disregarded applicable law in sustaining the protest. They also ask this court to strike pages of relators' merit brief that rely on evidence that should be stricken. Relators oppose the motion and have filed their own motion to strike.

{¶ 21} Intervening respondents rely on *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 2008-Ohio-333, in which this court held that in an election action challenging a board of elections' decision, "the board's decision . . . cannot be supported by evidence that was not introduced at the hearing and upon which it did not rely," *id.* at ¶ 40. But *Stoll* did not involve a motion to strike and "merely explains that evidence that was not presented to a board of elections is not relevant to whether the board abused its discretion or clearly disregarded applicable law," *State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections*, 2017-Ohio-8167, ¶ 11. We are capable of determining questions of relevance and weight without striking evidence. *Id.* We therefore deny intervening respondents' motion to strike relators' exhibits I, K, and L and the Brill and Werley affidavits and likewise deny the motion to strike pages of relators' merit brief. *See id.*

{¶ 22} As for relators' motion to strike, the motion attacks two exhibits submitted by intervening respondents. First, relators move to strike intervening respondents' exhibit No. 4, an August 30, 2024 letter from Vermilion Law Director

Susan Keating Anderson to respondent Adams, in which Anderson recommended that the board sustain the protest. Relators argue that if the court strikes their evidence because it was not presented to the board, then intervening respondents' exhibit No. 4 should be stricken for the same reason. The evidence before us, however, indicates that exhibit No. 4 was presented to the board and was referenced at the protest hearing. Accordingly, we deny the motion to strike exhibit No. 4.

{¶ 23} Separately, relators have moved to strike Fisher's affidavit, filed as intervening respondents' exhibit No. 1. The Fisher affidavit filed as evidence in this case is the same one that was submitted to the board as evidence during the protest hearing. Relators argue that Fisher was subpoenaed to appear before the board but did not appear at the September 12 hearing, depriving relators of the opportunity to cross-examine her. Relators also say that they attempted to subpoena Fisher for deposition and to produce documents but were rebuffed.

{¶ 24} We deny relators' motion to strike Fisher's affidavit. The affidavit is properly before the court as evidence submitted under S.Ct.Prac.R. 12.08. As evidence presented to the board, Fisher's affidavit is relevant to the determination whether the board abused its discretion or disregarded applicable law in deciding to sustain the protest.

{¶ 25} Relators' true gripe is with the board's consideration of the affidavit. Under R.C. 3519.18, boards of elections may take evidence in the performance of their duties. Indeed, relators objected to the board's consideration of Fisher's affidavit at the protest hearing because relator Phillips had purportedly subpoenaed Fisher to appear at the hearing and Fisher did not appear. But relators have cited no authority for the proposition that the board must disregard affidavit testimony presented at a protest hearing when the affiant was subpoenaed for the hearing but failed to appear. Moreover, relators have presented no evidence that a valid subpoena was served on Fisher compelling her attendance at the protest hearing. The copy of the subpoena purportedly served on Fisher was signed and issued by

relator Phillips as relators' attorney. But there is no signature of any board official to indicate that the board issued the subpoena. Rather, Phillips appears to have attempted to sign and issue the subpoena himself under Civ.R. 45. But Civ.R. 45 does not apply to a protest proceeding before a board of elections. *See* Civ.R. 1(A) (civil rules apply to procedures *in state courts*); Civ.R. 1(C)(8) (Civil Rules do not apply to special statutory proceedings). While it is true that a board of elections may subpoena witnesses, *see* R.C. 3519.18, relators have not demonstrated that the board subpoenaed Fisher.

### D. Motion for Leave to File Rebuttal Evidence

{¶ 26} Relators have filed a motion for leave to file rebuttal evidence under S.Ct.Prac.R. 12.08(A)(2)(d). They ask this court to consider exhibits I, K, L, M, and N as rebuttal evidence. We deny the motion.

{¶ 27} Rebuttal evidence "is that given to explain, refute, or disprove *new facts* introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." (Emphasis added.) *State v. McNeill*, 1998-Ohio-293, ¶ 44. Exhibits I, K, and L do not fit this description, as relators filed these exhibits with their merit brief as part of their affirmative case. It appears that they seek to introduce these exhibits as "rebuttal" evidence if this court grants the intervening respondents' motion to strike them. Because we deny the motion to strike exhibits I, K, and L, we deny as moot the motion for leave to file these same exhibits as rebuttal evidence.

{¶ 28} We deny the motion for leave outright as to exhibits M and N because neither of these exhibits is rebuttal evidence. Exhibit M contains several local-newspaper articles from late June to mid-September 2024 related to the zoning amendment and relators' intent to place a referendum on the ballot. And exhibit N contains copies of logs of print jobs from the copier used by Fisher to

10

make the copies of Ordinance 2024-29 that Fisher gave to Brill; exhibit N also includes a letter from Phillips to the Vermilion law director on July 29, 2024, demanding that the law director command Hendricks to transmit relators' referendum petition to the board. Relators do not offer any argument as to why these exhibits are rebuttal evidence, much less what *new* facts introduced by respondents or intervening respondents these exhibits are supposed to address. To the contrary, these exhibits seem to be evidence addressed to relators' main claims in the case—namely, that Fisher provided inaccurate copies to Brill and that intervening respondents should have filed their protest earlier. As such, these exhibits are not proper rebuttal evidence. We therefore deny relators' motion for leave to file them.

### E. Relators' Mandamus Claim

{¶ 29} To obtain a writ of mandamus, relators must establish by clear and convincing evidence (1) a clear legal right to have the board place the referendum on the ballot, (2) a clear legal duty on the part of the board to do so, and (3) the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Clark v. Twinsburg*, 2022-Ohio-3089, ¶ 16. In this case, relators lack an adequate remedy in the ordinary course of the law because of the proximity of the election. *See id.*

{¶ 30} As to the remaining elements for obtaining a writ of mandamus, relators must show that the board engaged in fraud or corruption, abused its discretion, or clearly disregarded applicable law in denying their protest. *State ex rel. Allen v. Warren Cty. Bd. of Elections*, 2007-Ohio-4752, ¶ 9. There is no fraud or corruption alleged here. Therefore, the relevant inquiry is whether the board abused its discretion or clearly disregarded applicable law in sustaining intervening respondents' protest and removing the referendum from the ballot.

### 1. The Doctrine of Laches is Inapplicable

{¶ 31} In their first proposition of law, relators argue that the board should have denied the protest on the basis of laches because the protestors waited too long

11

to file their protest with the board. We reject this argument because relators forfeited it.

{¶ 32} We need not resolve whether laches would be an appropriate basis to deny a statutory protest at the board level. The record before us shows that relators did not adequately raise a laches defense in the board proceeding. Though relators presented a laches argument in a prehearing written submission to the board, they did not offer evidence or argument in support of the laches theory at the protest hearing. By not raising the laches issue or presenting evidence in support of it at the hearing, relators forfeited the argument. The board could not have abused its discretion or clearly disregarded applicable law in rejecting a laches claim that was based on evidence not presented at the hearing. *See Stoll*, 2008-Ohio-333, at ¶ 40.

### 2. *The Attachments at Issue Are Part of the Ordinance*

{¶ 33} In their second proposition of law, relators challenge the premise that their precirculation certified copy of Ordinance 2024-29 was incomplete. It is undisputed that the only pages missing from relators' submission were pages from exhibit A referenced in the first "Whereas" clause of the recitals following the preamble of Ordinance 2024-29. The relevant passage states:

**AN ORDINANCE REZONING PROPERTY AT SUNNYSIDE ROAD IN VERMILION AND LORAIN COUNTY, OHIO OWNED BY VERMILLION LANDING AND COLLECTIVELY CONTAINING AN AREA OF APPROXIMATELY 300 ACRES FROM R-1 ESTATE RESIDENCE DISTRICT AND PUD PLANNED UNIT DEVELOPMENT, RESPECTIVELY, TO A PLANNED UNIT DEVELOPMENT.**

> **WHEREAS,** Vermilion Landing are the owners of approximately 300 acres of real property situated at Sunnyside Road, Vermilion, Ohio, identified as Permanent Parcel Nos. PPN 01-00-019-000-022 (65.1 Acres); 01-00-020-000-004 (50 Acres); 01-00-020-000-005 (35 Acres); 01-00-020-000-012 (31.2 Acres); 01-00-020-000-015 (13.1 Acres); 01-00-020-000-016 (33.5 Acres); and, 01-00-021-000-069 (70.6 Acres); Vacant land on east and west side of Sunnyside Road in Lorain County, Ohio and more particularly described in Exhibit A attached hereto and made a part hereof (the "Property") . . . .

(Capitalization, boldface, and underlining in original.)

{¶ 34} Relators argue that the preamble to Ordinance 2024-29, including the whereas clauses in the recitals, are *not* part of the ordinance, because they were not expressly incorporated into the ordinance. Thus, they argue that the pages that were missing from the certified copy of the ordinance filed under R.C. 731.32 were "superfluous" and that they did, in fact, file a complete copy of the ordinance passed by the Vermilion City Council.

{¶ 35} Relators do not cite a single case in which this court has held that a preamble or whereas clause to an ordinance is not part of the ordinance unless expressly incorporated. They cite two courts of appeals cases for this proposition, but neither so held. In *Dover Chem. Corp v. Dover*, 2022-Ohio-2307 (5th Dist.), a proposed ordinance at issue contained a clause that expressly stated that the whereas clauses were incorporated into the ordinance. *Id.* at ¶ 16, 19. But nowhere did the court of appeals hold that an express statement was *required* in order to make the clauses part of the ordinance.

{¶ 36} Nor does *Charls v. Cleveland*, 72 N.E.2d 770, 772 (8th Dist. 1939), stand for relators' stated proposition. In *Charls*, the court of appeals observed that

"the Whereas clause of an Ordinance might be valuable to set up the reasons for the passing of an Ordinance, but in the final analysis, the Whereas clause is no substantive part of the Ordinance itself." *Id.* But *Charls* made that statement concerning enforcement of a specific ordinance, not as a general rule applicable to ordinances protested under R.C. 731.32.

{¶ 37} Relators' position is further undermined by the cases they cite from this court. They rely on *Christy v. Summit Cty. Bd. of Elections*, 1996-Ohio-357, in support of their position that the first whereas clause, and therefore exhibit A referenced there, are not part of the ordinance. But *Christy* cuts against their argument. Relators rely on this court's explanation in *Christy* that "the preamble is 'the introductory part of a statute, ordinance, or regulation that states the reasons and intent of the law or regulation or is used for other explanatory purposes.'" *Christy* at ¶ 12, fn. 1, quoting *Webster's Third New World International Dictionary* (1986). This passage does *not*, however, state that a preamble and whereas clauses are not part of the ordinance.

{¶ 38} Further, *Christy* goes on to quote *Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137 (1988), in which we stated, "The preamble to [a certain ordinance] clearly stated the reason the ordinance was to go into effect immediately." *Id.* at 146. One issue in *Jurcisin* was whether the ordinance at issue contained a valid emergency clause that enabled an ordinance to become effective immediately. *Id.* at 145-146. By citing the emergency declaration in the preamble, this court in *Jurcisin* treated the preamble as a material part of the ordinance. *Christy* and *Jurcicin* therefore support the proposition that a whereas clause can be part of an ordinance enacted by a local legislative body. Thus, the relevant question in this case is whether the Vermilion City Council intended the attachments referred to as "Exhibit A" in the first whereas clause to Ordinance 2024-29 to be part of the ordinance.

**{¶ 39}** In interpreting municipal ordinances, this court follows standard rules of statutory construction. *Gesler v. Worthington Income Tax Bd. of Appeals*, 2013-Ohio-4986, ¶ 12. Thus, we must give meaning to the words used in the ordinance, avoiding a construction that renders a provision meaningless. *Athens v. McClain*, 2020-Ohio-5146, ¶ 35. Under these principles, the attachments incorporated by the first whereas clause (i.e., the deeds and legal descriptions of the rezoned property) are part of Ordinance 2024-29.

**{¶ 40}** Section 2 of Ordinance 2024-29 states, "That *the Property* is hereby rezoned from R-1 Estate Residence District and PUD Planned Unit Development to "'PUD Planned Unit Development' ", and Vermilion's Zoning Map shall be amended accordingly." (Emphasis added.) The only place in the ordinance where the property at issue is identified is in the first whereas clause of the recitals. Thus, "Property" is meaningless unless the first whereas clause is considered part of the ordinance. The first whereas clause and exhibit A provide the descriptions of the rezoned property that would otherwise be missing from Ordinance 2024-29.

**{¶ 41}** In their reply brief, relators attempt to rebut this analysis by arguing that the attachments to Ordinance 2024-29 "were just copies of legal descriptions" and were not labeled or accompanied by a cover sheet expressly naming them "Exhibit A." Thus, even if an "Exhibit A" could be considered part of the ordinance, relators argue, no documents labeled "Exhibit A" were incorporated into the ordinance. This argument is unpersuasive, however, because the first whereas clause expressly states that the property was "more particularly described in Exhibit A *attached hereto and made a part hereof*." (Underlining in original and emphasis added.) Regardless of the attachments being labeled "Exhibit A" by a separate label or cover page, the fact that the attached pages were legal descriptions of property makes it readily apparent that these are the descriptions "attached hereto and made a part hereof." The attachments themselves—labeled or not—were defined as the "Exhibit A" incorporated into Ordinance 2024-29.

*3. Strict Compliance with R.C. 731.32*

**{¶ 42}** A board of elections must accept a referendum petition unless it violates any requirement established by law. R.C. 3501.39(A)(2) and (A)(4). Noncompliance with the precirculation filing requirement in R.C. 731.32 renders a referendum petition defective. *LaChappelle*, 2023-Ohio-2723, at ¶ 14 (defective precirculation copy of ordinance filed under R.C. 731.32 relates to the sufficiency and validity of the petition).

**{¶ 43}** In their third proposition of law, relators argue that the board, by sustaining the protest to their petition, applied an "unduly technical interpretation" of R.C. 731.32 that impedes the public policy of referendum. Relators rely on the principle that election statutes should be liberally construed to permit the exercise of the power of referendum. *See State ex rel. Rose v. Lorain Cty. Bd. of Elections*, 2000-Ohio-65, ¶ 9. And in this case, relators argue, there was no reason for the board to sustain a protest based on a "super technical construction" of R.C. 731.32 when (1) only two pages of legal descriptions of property were missing from the precirculation copy of the ordinance filed by relators and (2) there was no evidence of fraud, deception, or misleading of petition signers.

**{¶ 44}** Though courts liberally construe municipal initiative and referendum powers so as to permit rather than restrict the right, it is also a settled rule "that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision expressly states that it is." *State ex rel. Ditmars v. McSweeney*, 2002-Ohio-997, ¶ 16. In this case, strict compliance is the applicable rule. "R.C. 731.32 does not expressly permit substantial compliance, so it requires strict compliance." *State ex rel. Barletta v. Fersch*, 2003-Ohio-3629, ¶ 17, citing *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections*, 1999-Ohio-308, ¶ 23, and *State ex rel. Mika v. Lemon*, 170 Ohio St. 1 (1959), paragraph two of the syllabus.

16

{¶ 45} *Barletta* is on point and supports the board's decision to sustain intervening respondents' protest to the referendum petition. In that case, the two ordinances at issue approved plats for development within the city and attached the final plats to each ordinance as an exhibit "attached [t]hereto and incorporated [t]herein." *Id.* at ¶ 2, 5. The relators in *Barletta* filed certified copies of the ordinances along with precirculation copies of their referendum petitions; however, their copies did not include the plats that had been incorporated by reference into the ordinances' text. *Id.* at ¶ 7. After the board of elections determined that the petitions had enough signatures to qualify for the ballot, the municipal clerk refused to certify the petitions *Id.* at ¶ 9. The *Barletta* relators sought a writ of mandamus ordering the municipal clerk to certify the validity and sufficiency of the referendum petitions for submission to the ballot. *Id.* at ¶ 10. The municipal clerk answered that the petitions did not comply with R.C. 731.32. *Id.*

{¶ 46} This court denied the writ, holding that the relators failed to comply with R.C. 731.32. *Barletta* at ¶ 13. Because the relators omitted the plats from their filings with the municipal clerk, "they filed incomplete certified copies of the ordinances," which did not strictly comply with the statutory requirement. *Id.* at ¶ 16-17. And by failing to file complete certified copies of the two ordinances, the relators "denied interested citizens an opportunity to examine *complete* copies of the ordinances when [they] filed them in the finance director's office." (Emphasis in original.) *Id.* at ¶ 18.

{¶ 47} The board's decision to sustain the protest in this case is consistent with *Barletta*. Relators concede that they filed an incomplete copy of Ordinance 2024-29 with Finance Director Hendricks before circulating their referendum petition. The board therefore did not abuse its discretion or disregard applicable law by sustaining the protest and refusing to place relators' referendum on the ballot. Strict compliance is required by R.C. 731.32, and relators' incomplete certified copy failed to meet this standard. *See Barletta* at ¶ 16-18.

**{¶ 48}** Notwithstanding *Barletta*'s direct application to the facts of this case, relators rely on other cases that, according to them, support their argument that this court should treat their precirculation certified copy of Ordinance 2024-29 as valid even though it was incomplete. Relators first direct the court to *Stutzman v. Madison Cty. Bd. of Elections*, 2001-Ohio-1624. In *Stutzman*, referendum petitioners sought to submit to the voters a zoning amendment affecting "approximately 89.425 acres" in Plain City. *Id.* at ¶ 5. The referendum petition included "a full and correct copy" of the zoning-amendment title but stated that the amendment affected "approximately 89.45 acres." *Id.* at ¶ 1-2. Stutzman protested the board of elections' placement of the referendum on the ballot, citing among other defects the misstatement of the acreage affected by the amendment. *Id.* at ¶ 5. After the board of elections denied his protest, Stutzman sought extraordinary-writ relief in this court. *Id.* at ¶ 7.

**{¶ 49}** This court denied the writ. We acknowledged that R.C. 731.31 requires that each referendum petition "contain a full and correct copy of the title and test of the proposed ordinance" and that the statute requires strict compliance. *Id.* at ¶ 12. We nevertheless rejected Stutzman's argument that the 0.025-acre discrepancy in the title of the ordinance prevented strict compliance. We considered the error in that case to be de minimis. *Id.* at ¶ 16. "Invalidating the referendum petition [in *Stutzman*] based on the hypertechnical grounds suggested by Stutzman [would have served] no public interest or public purpose, including the legislative purpose of the R.C. 731.31 requirement of a 'full and correct copy of the title of the ordinance.' " *Stutzman* at ¶ 17.

**{¶ 50}** This case is not like *Stutzman*. This case involves more than a fractional misstatement of acreage in the text of an ordinance presented on a referendum petition. In this case, relators' copy of the ordinance filed under R.C. 731.32 omitted two pages of attachments related to the legal descriptions of the property being rezoned—pages that the Vermilion City Council expressly

incorporated into the ordinance. We do not consider this omission to be de minimis. Moreover, as this court observed in *Barletta*, the purpose behind R.C. 731.32 is to provide "interested citizens an opportunity to examine *complete* copies of the ordinances when relators filed them in the finance director's office." (Emphasis in original.) *Barletta*, 2003-Ohio-3629, at ¶ 18. An *incomplete* copy of the ordinance does not satisfy this purpose. Thus, the board's decision to sustain the protest to relators' referendum petition was in furtherance of R.C. 731.32's public purpose.

{¶ 51} Relators also rely on *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections*, 72 Ohio St.3d 289 (1995), for the proposition that their referendum petition is valid despite their incomplete certified copy filed under R.C. 731.32. In *Thurn*, this court refused to remove a proposed initiative from the ballot. *Id.* at 295. The relator in *Thurn* argued that the initiative petition was invalid because it did not contain "a full and correct copy of the title and text of the proposed ordinance," as required by R.C. 731.31. The text of the proposed ordinance attached to the petition in *Thurn* omitted "Figures 1-8" that were referred to in the ordinance text. *Id.* at 289, 292. This court concluded that the "figures" referred to in the text of the proposed ordinance were *not* part of the ordinance and did not need to be attached to the initiative petition. *Id.* at 292-293.

{¶ 52} Relators cite *Thurn* for the proposition that their referendum petition is valid despite their incomplete certified copy filed under R.C. 731.32. But *Thurn* is distinguishable. This court rejected the relator's argument in *Thurn* because the allegedly missing attachments were *not* actually part of the proposed initiative being presented to the voters. *Id.* at 292-293. In contrast here, relators' filing under R.C. 731.32 was missing two pages that *are* part of the ordinance that is the subject of their referendum petition. *Thurn* is therefore of no help to relators.

### 4. Noncompliance with R.C. 731.32

{¶ 53} In their fourth proposition of law, relators contend that their filing of an incomplete copy of the ordinance was attributable to Fisher's giving them

incomplete certified copies. This error by "a public official charged with an election duty," say relators, should not destroy the efficacy of their referendum petition.

{¶ 54} There is a factual dispute as to whether the certified copies that Fisher provided to Brill on June 18 was a full and complete copy of Ordinance 2024-29. In her affidavit submitted to the board, Fisher attested that she provided Brill three complete copies, each consisting of ten pages, with two single-sided pages and eight double-sided pages, the latter consisting of the attachments containing legal descriptions of the rezoned property. Brill, however, testified at the hearing that the copies Fisher provided were incomplete. At least one member of the board of elections appeared to resolve this factual dispute in relators' favor, noting that Fisher had apparently provided incomplete copies of Ordinance 2024-29 in response to Brill's request for a certified copy of the ordinance. However, regardless of whether Fisher provided incomplete copies, the board did not abuse its discretion or disregard applicable law in sustaining the protest.

{¶ 55} Even if Fisher provided Brill with incomplete copies of Ordinance 2024-29, that circumstance does not excuse relators' noncompliance with R.C. 731.32. Brill testified at the hearing that relators knew pages were missing from the copies Fisher provided. Instead of returning to Fisher to obtain complete copies, though, relator Phillips attempted to reassemble the attachments to Ordinance 2024-29 by going to the county recorder's office and obtaining what he thought was missing from the copies Fisher provided. What relators ultimately filed with the finance director, however, was not only *not* what Fisher gave them, but it was still incomplete, missing two pages of the attachments expressly incorporated into the ordinance. Based on the record before us, the board did not abuse its discretion or disregard applicable law in sustaining the protest on the basis of relators' noncompliance with R.C. 731.32.

20

### III. CONCLUSION

**{¶ 56}** For the foregoing reasons, we deny the writ of mandamus. We also deny relators' and intervening respondents' motions to strike, relators' motion for leave to file rebuttal evidence, and relators' request for oral argument. We grant relators' motion to amend the case caption and order the caption amended accordingly.

Writ denied.

_____

**BRUNNER, J., joined by DONNELLY and STEWART, JJ., concurring in judgment only.**

**{¶ 57}** Paragraph 21 of the majority opinion cites *State ex rel. Stoll v. Logan Cty. Bd. of Elections*, 2008-Ohio-333, ¶ 40, which establishes that a board of elections' "decision to deny [a] protest cannot be supported by evidence that was not introduced at the hearing and upon which it did not rely." The majority opinion uses this text to support rejecting the equitable defense of laches made by relators, Marilyn Brill, Carrie Ott, Gerald W. Phillips, Jean Anderson, Adam Wilson, and Concerned Vermilion Citizens, L.L.C., concerning the proceedings before respondent, Lorain County Board of Elections, in a mandamus action before this court.

**{¶ 58}** Laches is an equitable affirmative defense that a litigant may raise in a court proceeding when the litigant is materially prejudiced by the adverse party's delay in bringing suit. *See* [*State ex rel*]. *Pennington v. Bivens*, 2021-Ohio-3134, ¶ 2, 26 (laches is an equitable defense); *State ex rel. Hildreth v. LaRose*, 2023-Ohio-3667, ¶ 9 (laches is an affirmative defense that is waived if not raised in the answer).[4] What the majority opinion neglects to say, however, is that laches cannot

_____

4. Relators cite *State ex rel. Commt. for the Referendum of Ordinance No. 3543-00 v. White*, 2000-Ohio-64, for the proposition that laches is *not* an affirmative defense in an election case. While this court in that case did state that "laches is not an affirmative defense in an election matter, i.e.,

be used by relators to render a noncompliant referendum petition valid so as to effectively make its challenge a nullity. The law is that as an equitable defense, the defense of laches is unavailable to parties with unclean hands. *State ex rel. Mallory v. Pub. Emps. Retirement Bd.*, 1998-Ohio-380, ¶ 27.

{¶ 59} Relators' situation is unfortunate in that they apparently received an incomplete certified copy of the ordinance for the purpose of submitting it for a referendum vote by the electors of the municipality. The board of elections, in hearing a protest of the petition by intervening respondents, DBR Commercial Realty, L.L.C., and Kathryn Craig, followed the law in sustaining the protest, finding that the mistake lay with relators. They had attached to the submission certain missing pages they obtained on their own, and the board found that the copy of the ordinance still did not fulfill the legal requirements for placing it before the municipality's voters. Relators may not assert the equitable defense of laches before this court as a means to attack the board's action when relators' own petitioning error resulted in the matter being brought to the board for quasi-judicial review. The majority fails to note this or generally recognize that the equitable principle of unclean hands bars the use of laches as an equitable defense.

{¶ 60} By and large, it is true that relators in election-related original actions seeking special writs from the courts must act with the utmost diligence. *See State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 2002-Ohio-5922, ¶ 7. No one is alleging that *relators* failed to bring their action promptly; rather, relators argue that intervening respondents were not diligent in filing their protest before any proceeding was ever filed in court—that is, they were not diligent in filing their protest with the board of elections. When we have applied the doctrine of laches

---

respondents are not required to raise the defense," *id.* at ¶ 17, more recently, we unanimously held that a board of elections in an expedited election case waived a laches defense when it did not plead laches as an affirmative defense in its answer, *Hildreth*, 2023-Ohio-3667, at ¶ 29. As an equitable defense, laches is unavailable to parties with unclean hands. *State ex rel. Commt. for the Referendum of Lorain Ordinance No. 77-01 v. Lorain Cty. Bd. of Elections*, 2002-Ohio-4194, ¶ 35.

to bar extraordinary relief in an election case, we have done so because the relators seeking extraordinary relief unduly delayed in bringing their writ action, to the prejudice of the respondents. *Id.* at ¶ 11-12; *see also State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 1995-Ohio-269, ¶ 14; *State ex rel. White v. Franklin Cty. Bd. of Elections*, 65 Ohio St.3d 45, 48 (1992) (collecting cases).

{¶ 61} Procedurally, relators cannot raise laches, an equitable defense, in an administrative proceeding such as a board-of-elections protest over which the board is acting as a tribunal exercising quasi-judicial authority in a hearing under R.C. 3501.39(A). *See State ex rel. Barney v. Union Cty. Bd. of Elections*, 2019-Ohio-4277, ¶ 12. Generally, administrative agencies in Ohio are created to administer specific regulatory schemes. Their authority is often limited to legal remedies, such as those authorized in this case that appear in R.C. 3501.39(A). R.C. 3501.39(A) does not grant to boards of elections the power to issue cease-and-desist orders, for example. Here, the board of elections' quasi-judicial authority is purely legal—to adjudge the petition's validity according to the law. R.C. 3501.39(A)(1), (2), and (4) (requiring the board of elections to place the issue on the ballot unless the petition fails to meet the requirements of the law). The board exercised its legal power in a quasi-judicial hearing and removed the issue from the ballot, because the relators did not fulfill the requirements to access the ballot. Thus, laches is an ill-fitting doctrine for protest proceedings before a board of elections.

{¶ 62} However, relators' argument is not a new one in this court. In *Lorain Ordinance No. 77-01*, the board of elections sustained a protest to a referendum petition after previously denying a protest brought by the same protester. 2002-Ohio-4194 at ¶ 5-6, 17. In the writ action that followed, the referendum committee argued that the board should have denied the protest on the basis of laches. *Id.* at ¶ 34. This court rejected that argument, and the referendum committee was barred from raising laches because of the unclean-hands doctrine. *Id.* at ¶ 35, citing *State*

*ex rel. Commt. for the Referendum of Ordinance No. 3543-00 v. White*, 2000-Ohio-64, ¶ 17, and *Christman v. Christman*, 171 Ohio St. 152, 154 (1960).

{¶ 63} Curiously, the majority opinion seems to indulge the premise that the board could have considered laches, so it is worthwhile to detail why relators' argument to that effect falls short. "The elements of a laches defense are '(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party.' " *Pennington,* 2021-Ohio-3134, at ¶ 25, quoting *State ex rel. Carrier v. Hilliard City Council,* 2016-Ohio-155, ¶ 8. Relators argue that intervening respondents waited until August 20 to file their protest even though the precirculation notice of the referendum petition and purported certified copy were filed on June 20. Relators say this 61-day delay was unreasonable in the context of an election-related matter.

{¶ 64} Relators rely on the wrong date from which to measure a delay. The referendum petition was not certified for the ballot until August 1, when Vermilion Finance Director Amy Hendricks certified the petition to the board under R.C. 731.29 for placement on the ballot. There was nothing for intervening respondents to protest until August 1. *See State ex rel. LaChappelle v. Harkey*, 2023-Ohio-2723, ¶ 14 (argument that precirculation copy of ordinance filed under R.C. 731.32 was defective was premature when raised before city auditor certified validity of petition under R.C. 731.29). Therefore, August 1 is the date by which to measure any delay under relators' laches theory.

{¶ 65} Intervening respondents filed their protest 19 days after Hendricks certified the referendum petition to the board for placement on the ballot. When this court has applied laches in election cases granting extraordinary writs, delays of this duration *before filing suit* have been deemed unreasonable. *See, e.g.*, *Fuller*, 2002-Ohio-5922, at ¶ 11 (17-day delay); *Polo*, 1995-Ohio-269, at ¶ 13 (17-day delay). But in the context of *filing a protest with a board of elections* in the first

24

instance, the 19-day delay in this case is not unreasonable. Though there is no statutory deadline for a protest to a referendum petition to be filed, *see* R.C. 3501.39(A), the statutory deadline for other ballot-related protests to be filed with boards of elections was August 23 (i.e., the 74th day before the election). *See* R.C. 3513.263 (74th-day deadline for protests against candidates); R.C. 4301.33(B)(4) (74th-day deadline for protests against local-liquor-option petitions). Because intervening respondents in this case filed their protest three days before this statutory deadline for similar ballot protests, their 19-day delay was not unreasonable.

{¶ 66} The majority opinion in this case fails to state why it rejects relators' argument that intervening respondents' protest to the board of elections was barred by the doctrine of laches, failing specifically to emphasize that the doctrine of unclean hands bars a litigant from asserting the defense in equity. Relators' errors in complying with the law for municipal-referendum petitioning prevent the use of the equitable defense of laches even if a laches defense might be otherwise warranted.

{¶ 67} Laches may not be used to abandon the law, and this is assured by the longstanding principle that "laches is still an equitable doctrine," *Ordinance No. 3543–00,* 2000-Ohio-64, at ¶ 17. Therefore, "'he who seeks equity must do equity, and . . . must come into court with clean hands.' " *Lorain Ordinance No. 77-01*, 2002-Ohio-4194, at ¶ 35, quoting *Christman*, 171 Ohio St. at 154. For whatever reason, the majority has declined to apply this important point of law to this case. Accordingly, I concur in judgment only.

———————————

Phillips & Co., L.P.A., and Gerald W. Phillips, for relators.

J.D. Tomlinson, Lorain County Prosecuting Attorney, and Daniel Petticord and Greg Peltz, Assistant Prosecuting Attorneys, for respondents.

McTigue & Colombo, L.L.C., Donald J. McTigue, and Stacey N. Hauff, for

intervening respondents.

_____